1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TRISHA C.,

     Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

Case No. C23-0822-SKV

ORDER AFFIRMING THE
COMMISSIONER'S DECISION

   Plaintiff seeks review of the denial of her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).  Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

**BACKGROUND**

   Plaintiff was born in 1980, has a high school education, and has worked as a babysitter. AR 105, 107, 117.  Plaintiff was last gainfully employed in July 2012.  AR 107, 367.

   On June 12, 2017, Plaintiff applied for benefits, alleging disability as of February 1, 2012.  AR 345, 347.  Plaintiff's applications were denied initially and on reconsideration, *see* AR 81, and Plaintiff requested a hearing.  At a hearing conducted by the ALJ on March 23, 2022, Plaintiff amended her onset date to August 1, 2012.  AR 98-122.  On March 30, 2022, the ALJ issued a decision finding Plaintiff not disabled.  AR 81-91.

1

## THE ALJ'S DECISION

2

Utilizing the five-step disability evaluation process,[1] the ALJ found:

3

**Step one**:  Plaintiff has not engaged in substantial gainful activity since August 1, 2012.

4

5

**Step two**:  Plaintiff has the following severe impairments:  hepatitis C, spine disorder, substance abuse (both drugs and alcohol), substance induced mood disorders, affective disorder, anxiety disorder, trauma and stressor related disorder, and obsessive compulsive disorder.

6

7

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[2]

8

**Residual Functional Capacity**:  Plaintiff can perform light work with additional limitations.  She can lift or carry 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk for 4 hours in an 8-hour workday, and can sit for 6 hours in an 8-hour workday.  She can push and pull in the limits for lifting and carrying.  She can occasionally use ramps and stairs, cannot use ladders, ropes, or scaffolds, can frequently stoop and kneel, and can occasionally crouch and crawl.  She can do frequent overhead reaching, handling, fingering, and feeling.  She should avoid concentrated exposure to extreme cold, vibration, and hazards.  She should not work where blood contamination might harm others due to hepatitis C, such as in food service or the medical field.  She can understand, remember, and carry out simple work instructions and tasks at an SVP 2 level.  She can have occasional contact with coworkers, supervisors, and the public, but should not work with the public as a primary job duty.  She should not work around controlled substances.

9

10

11

12

13

14

15

**Step four**:  Plaintiff cannot perform past relevant work.

16

**Step five**:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

17

18

AR 84-91.

19

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

20

Commissioner's final decision.  AR 1-7.  Plaintiff appealed the final decision of the

21

Commissioner to this Court.  Dkt. 4.

22

*/ / /*

23

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

**LEGAL STANDARDS**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

**DISCUSSION**

Plaintiff argues the ALJ erred by improperly rejecting the opinions of physical consultative examiners Lynn Staker, M.D., and Mark Heilbrunn, M.D. The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

1        Under regulations applicable to this case, the ALJ is required to articulate the

2  persuasiveness of each medical opinion, specifically with respect to whether the opinions are

3  supported and consistent with the record.  20 C.F.R. § 404.1520c(a)-(c).  An ALJ's consistency

4  and supportability findings must be supported by substantial evidence.  *See Woods v. Kijakazi*,

5  32 F.4th 785, 792 (9th Cir. 2022).

6        In this case, the ALJ found that the opinions of Drs. Staker and Heilbrunn were not

7  persuasive.  AR 89.  The ALJ noted that Dr. Staker's evaluation was conducted for Medicaid

8  purposes and did not use the same standards or definitions of disability used by the Social

9  Security Administration.  *Id*.  The ALJ found the evaluations of Dr. Staker and Dr. Heilbrunn

10  "not detailed and rather vague, as they do not specify functional limitations[,]" that they lacked

11  any explanation or citation to evidence to support the opinions, and that they failed to account for

12  Plaintiff's substance abuse.  *Id*.  The ALJ further found that no other medical opinion of record

13  supported the assessments, that they were inconsistent with the prior administrative medical

14  findings regarding physical limitation, and that they nonetheless "overall indicate that the

15  claimant can work."  *Id*.

16        Plaintiff first argues that, whether or not a Medicaid evaluation uses different standards,

17  neither Dr. Staker, nor Dr. Heilbrunn suggested Plaintiff is disabled, and instead assessed

18  specific functional limitations and relied upon their examinations and imaging results to support

19  their opinions.  Plaintiff next denies that her substance use impacted her physical impairments

20  and notes the absence of a drug abuse and alcoholism (DAA) analysis, while adding that, given

21  the absence of any impact, the failure to perform that analysis is likely harmless.  Plaintiff also

22  argues that the opinion of Dr. Staker provides support for the opinion of Dr. Heilbrunn, and vice

23  versa, asserts the ALJ's failure to explain how these opinions are inconsistent with their own or

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 4

any other examinations, and asserts that the mere existence of the State agency physician opinions does not suffice as a basis to reject the opinions of the examining physicians.  Plaintiff, finally, asserts that the ALJ offers no evidence to back up the statement that the opinions of Drs. Staker and Heilbrunn indicate Plaintiff can work.

The Court, with consideration of these arguments and the ALJ's reasoning, addresses each disputed opinion in turn.

### A.     The ALJ Did Not Harmfully Err in Addressing Dr. Staker's Opinion

Dr. Staker conducted a consultative examination of Plaintiff for DSHS on August 6, 2014, and completed both a DSHS form and narrative report.  AR 552-68.  Dr. Staker diagnosed early degenerative arthritis of the left hip causing anterior hip and groin pain, some mild degenerative disc disease of the spine at the L5-S1, and a mild thoracolumbar scoliosis.  AR 561. Dr. Staker opined that, because of the hip pain, Plaintiff would have problems with prolonged standing, walking, and ambulating, and pointed to findings of "some mild degenerative disc [sic] of the lower lumbar spine, otherwise things [sic] mainly soft tissue inflammation."  *Id*.  Dr. Staker also opined that Plaintiff would "[m]ost likely, . . . be at a sedentary to very light duty type of work level with limited bending, prolonged walking or standing."  AR 562.

The Commissioner does not defend the ALJ's observation as to a distinction between DSHS and Social Security disability eligibility, and the Court does not find this observation to serve as a valid critique.  Dr. Staker's opinion is relevant for the ALJ's purposes and any unspecified distinctions between applicable policies or disability criteria do not undermine its persuasiveness.  The Court also finds invalid any critique of the opinion of Dr. Staker or Dr. Heilbrunn based on a failure to consider substance use.  That is, the ALJ found Plaintiff's use of substances did not impact her ability to perform the functional limitations assessed, *see* AR 88,

1   and there is no basis for finding the opinions of these physicians undermined due to a failure to

2   consider that same use of substances.[3]   The Court, in any event, finds these errors harmless given

3   the ALJ's assessment of supportability and consistency, as discussed below.

4         The "supportability" factor addresses the relevance of the objective evidence presented in

5   support of an opinion, as well as the "supporting explanations" provided by the medical source.

6   20 C.F.R. § 404.1520c(c)(1).  Here, as the ALJ observes, Dr. Staker's opinions were vague and

7   lacked sufficient detail or specific functional limitations.  Dr. Staker did not specify the length of

8   time Plaintiff could stand and walk at one time or in total during an eight-hour workday or the

9   extent to which she was limited in her ability to bend.  Dr. Staker opined that Plaintiff would

10  "most likely" be limited to an undefined category of "sedentary to very light duty type of

11  work[.]"  AR 561-62.  The ALJ's consideration of supportability was thus appropriate.  *See, e.g.*,

12  *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("Here, the ALJ found that Dr. Zipperman's

13  descriptions of Ford's ability to perform in the workplace as 'limited' or 'fair' were not useful

14  because they failed to specify Ford's functional limits. Therefore, the ALJ could reasonably

15  conclude these characterizations were inadequate for determining RFC."); *Bissmeyer v. Kijakazi*,

16  No. C21-0209, 2023 WL 1099161, at *7 (E.D. Cal. Jan. 30, 2023) ("As to apparent

17  supportability, the ALJ also found Dr. Serra's sitting limitation 'somewhat vague' because Dr.

18  Serra did not specify whether Plaintiff was limited to sitting up to four hours at one time or four

19  hours total in an eight-hour workday.").

20        The ALJ also properly considered the absence of supportive evidence or explanation.

21  Dr. Staker attributes the assessed problems with prolonged standing and walking to "pain in the

22

23       [3] In addition, although the ALJ did not make any distinction as to its applicability, this reasoning
was offered in relation to the opinions of multiple physicians, including a consultative psychological
examiner who noted that Plaintiff denied any use or abuse of drugs or alcohol.  AR 89, 531-50.

hip," while describing associated findings of only "some mild degenerative disc of the lower lumbar spine, otherwise things mainly soft tissue inflammation." AR 561. Neither the evidence cited, nor the largely mild and normal findings on examination and in imaging provide adequate corroboration of or explanation for the degree of limitation assessed. *See id*. (describing examination findings of tenderness at L3 to S1, a positive Trendelenburg test on the left, mild lumbar asymmetry, no motor or sensory deficit, full range of motion of the right hip, mild limitations of the left hip, and imaging showing only a very mild scoliosis, marked sclerosis and irregularity of the joint surface on the left hip but with no significant narrowing, lumbar spine showing mild degenerative spur and some sclerosis at L5-S1, very mild thoracolumbar scoliosis, and otherwise x-rays within normal limits).

The ALJ also addressed consistency. This factor examines the consistency of the opinion with evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ here found no other medical opinions of record supported the sedentary-work assessments of Drs. Staker and Heilbrunn, and found the opinions inconsistent with administrative medical findings regarding physical limitations. The ALJ observed that the State agency physicians, in October 2017 and September 2020, opined Plaintiff could perform light work with postural, manipulative, and environmental limitations, as well as with limitations in standing and walking. AR 87. The ALJ found these opinions persuasive because they were "generally consistent with the overall medical evidence, near normal physical examinations, the objective findings on imaging, and the claimant's treatment notes indicating improvement in symptoms with medication." AR 87, 89. The ALJ further found Plaintiff's daily living activities, including her ability to prepare meals, do laundry, care for her special needs children,

1    and shop, supported the opinions of the State agency physicians, and noted their unique, expert

2    training in the evaluation of disability claims.  AR 89.

3        Plaintiff, as noted above, points to consistency between the opinions of Drs. Staker and

4    Heilbrunn, asserts a failure to explain any alleged inconsistency, rejects the ALJ's purported

5    reliance on the mere existence of the State agency physician opinions, and asserts an absence of

6    support for the assertion that the opinions of Drs. Staker and Heilbrunn indicate Plaintiff can

7    work.  It is, however, the Court's obligation to determine whether the record contains substantial

8    evidence supporting the ALJ's findings of fact.  *See, e.g., Woods*, 32 F.4th at 788 ("Under the

9    substantial-evidence standard, we look to the existing administrative record and ask whether it

10   contains sufficient evidence to support the agency's factual determinations.") (cleaned up).  The

11   Court here finds the ALJ's assessment of consistency to have the support of substantial evidence.

12       The ALJ did not merely assert reliance on the opinions of the State agency physicians.

13   Prior to finding those opinions consistent with the medical evidence and with Plaintiff's

14   activities, the ALJ assessed the medical record as a whole.  *See* AR 86-89.  The ALJ found that,

15   despite complaints of back and hip pain, Plaintiff had had very little treatment for pain.  AR 86.

16   The ALJ noted that, in May 2013, Plaintiff reported she had not been treated for a year, lost her

17   insurance but had not been out of medication, and had an essentially normal examination, and

18   that, in November 2013, she complained of low back pain with numbness into her right hip to

19   her foot, but had a negative straight leg raise test on examination.  AR 86-87 (citing AR 516-17

20   (back normal on examination, with no muscle spasm) and AR 510-11 (reporting pain for many

21   years, that comes and goes, and is minimal; spine tender on palpation, but normal appearance

22   and negative straight leg raise test)).  The ALJ found, and a review of the record shows, that

23   there was "not much more treatment for pain."  AR 87; *see* AR 697-701 (October 11, 2016

presentation with moderate left hip pain, worsening and occurring occasionally; "Has had this problem for years, ibuprofen is not helping as much as it used to."; tenderness and mildly reduced range of motion on examination; added Lyrica for help with pain); AR 722-23, 792-93 (July 13, 2017 presentation with lumbosacral pain and numbness/lower back pain; normal results on musculoskeletal examination). *See also* AR 854-59 (December 10, 2020 appointment for hepatitis C with report of positive for back pain and normal range of motion on examination); AR 889-92 (January 26, 2021 hepatitis C follow-up with report of positive for back pain and normal musculoskeletal examination); AR 907-10 (March 2, 2021 hepatitis C follow-up with report of negative for back pain).

The ALJ also addressed the evidence from Dr. Staker and Dr. Heilbrunn in reviewing the medical record. *See* AR 86-87. Specifically, the record did not show that Plaintiff had followed Dr. Staker's recommendation to obtain physical therapy and medical follow-up, and reported to Dr. Heilbrunn having back and neck pain, but that she did not need an assistive device to walk and that she shops and can climb fifteen stairs. AR 87. The ALJ reasoned that medical reports showing only minimal problems discounted Plaintiff's subjective complaints, and observed that Plaintiff "did not take any prescription medication for her pain, just Excedrin." AR 87.

The ALJ, in sum, properly examined the consistency of the opinions of both Dr. Staker and Dr. Heilbrunn with evidence from other medical sources of record, and reasonably found their opinions inconsistent with the opinions of the State agency physicians and with the medical record as a whole. Because substantial evidence supports both the supportability and consistency findings in relation to Dr. Staker, Plaintiff does not show that the ALJ erred in finding that Dr. Staker's opinion was not persuasive.

1       **B.**     **The ALJ Did Not Harmfully Err in considering Dr. Heilbrunn's Opinion**

2       Dr. Heilbrunn examined Plaintiff on September 18, 2017 and issued a narrative report.

3 AR 738-43.  Dr. Heilbrunn diagnosed lumbar strain/degenerative disc disease, hip osteoarthritis,

4 bilateral knee osteoarthritis, cervical osteoarthritis, and hypertension. AR 742.

5       The ALJ's supportability finding with respect to Dr. Heilbrunn is inaccurate in part.  Dr.

6 Heilbrunn did specify functional limitations, including the ability to lift/carry "0-0-10 pounds

7 with either hand/arm on an occasional basis."  AR 743.  However, the report is also reasonably

8 depicted as vague and lacking sufficient detail.  Dr. Heilbrunn, for example, provided a

9 confusing assessment of the extent to which Plaintiff would be able to walk and stand, stating:

10 "She will be able to walk/stand for up to 20 minutes uninterrupted before giving to [sic] length of

11 time of 4 out of 8 hours.  There are no –3—for out of 8 hours." *Id*.

12       Dr. Heilbrunn also cited some evidence and explanation in support of his opinion.  In the

13 functional assessment, Dr. Heilbrunn pointed to Plaintiff's left hip pain as her most limiting

14 condition, noted a finding on examination of moderately decreased lumbar range of motion, and

15 explained the lifting/carrying capacity "as measured in examination[.]" AR 742-43.  The report

16 included examination findings of tenderness in the lumbar midline from L3-S1 and paraspinous

17 lower lumbar tenderness consistent with degenerative disc disease and decreased range of motion

18 in the left hip consistent with degenerative joint disease, and described July 2017 lumbar spine

19 imaging as showing L3-4 and L4-5 degenerative disc changes and L5-S1, bilateral degenerative

20 facet changes.  AR 738, 741-42.  Dr. Heilbrunn does not, however, cite to any other objective

21 evidence or explain how the evidence cited or contained in the report supports the degree of

22 limitation assessed.

23

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 10

Moreover, and as discussed above, the ALJ properly and reasonably found Dr. Heilbrunn's opinion not persuasive with consideration of consistency.  Any error in the ALJ's other lines of reasoning is therefore harmless.  *See Woods*, 32 F.4th at 793 n.4 (finding that, even if an opinion is supported, an ALJ may properly find it unpersuasive because it is inconsistent with the record).  Because the ALJ provided at least one legally sufficient reason to discount Dr. Heilbrunn's opinion, the ALJ's assessment of the opinion is affirmed.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 14th day of November, 2023.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 11